# H. C. Frick Coke Company *v.* Mount Pleasant Township, Appellant.

*Taxation—Road tax—Township—"Last adjusted valuation"—Act of April* 12, 1905, *P. L.* 142—*Equity—Act of April* 15, 1834, *P. L.* 509.

Under the Act of April 12, 1905, P. L. 142, there is no "last adjusted valuation for county purposes" from which a road tax may be levied by the supervisors of a township, until the county commissioners have examined and corrected the assessor's return and the board of revision

has given the taxpayer an opportunity to be heard.  As long as the valuation returned by the assessor is open to correction by the board of revision it cannot be said that the valuation has been adjusted by the board of revision.

While the Act of April 19, 1889, P. L. 37, authorizes an appeal to the common pleas from the final adjudication of the board of revision, the appeal is not a supersedeas and does not prevent the collection of the tax.  If the valuation is reduced, the excess of taxes is returned to the person who paid them.

Under the facts of this case, a court of equity has jurisdiction to restrain the supervisors of a township from levying a road tax on a valuation of property which is not "the last adjusted valuation for county purposes."  The Act of April 15, 1834, P. L. 509, affords no adequate remedy of law in such a case.

Argued Oct. 7, 1908.  Appeal, No. 223, Oct. T., 1908, by defendants, from decree of C. P. Westmoreland Co., No. 627, on bill in equity in case of H. C. Frick Coke Company v. The Township of Mt. Pleasant and J. A. Porch, collector of taxes of said township.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Bill in equity for an injunction.  Before DOTY, P. J.
The facts are stated in the opinion of the Supreme Court.

The court entered a decree as follows:
And now, June 27, 1908, this case having been heard on bill, answer and proofs and after argument and due consideration, it is ordered, adjudged and decreed that the road taxes in Mt. Pleasant township for the year 1907 have been paid by the plaintiff company so far as it is legally chargeable therewith; and the said township of Mt. Pleasant and J. A. Porch, collector of said taxes, are hereby enjoined and restrained from the collection of any other road tax from the said plaintiff for the year 1907; that the defendants pay the costs of this proceeding.

*Error assigned* was the decree of the court.

*James S. Beacom,* with him *David L. Newill,* for appellants.—
It is clear that "adjusted valuation" as used in this act means

the valuation returned by the assessor after the correction of errors or deviations. This is the only valuation that is referred to any place in the act as an "adjusted valuation." Subsequent sections of the act provide for appeals and how they shall be advertised and conducted and who shall attend them, and gives the commissioners power to regulate the assessments according to the alterations made, but these proceedings are all subsequent to the time that the assessment is made upon the adjusted valuation. The appeals, therefore, must be taken from the adjusted valuations, and not for the purpose of adjusting the valuations: Stewart v. Maple, 70 Pa. 221.

No matter what the valuation of the specific property may have been at the time the rate was fixed and the assessment made, the assessment reaches forward and grasps the valuation as finally fixed, either by the county commissioners on appeals or by the court of common pleas on appeal from the commissioners to that court: Appeal of William H. Brown, 111 Pa. 72; Hamlin v. Peck, 135 Pa. 493; Moore v. Taylor, 147 Pa. 481; South Strabane Twp. v. Patterson, 55 Pittsburg Leg. Journ. 18.

A bill in equity for an injunction is not a proper remedy for the redress of the grievance complained of: Carlisle School Dist. v. Hepburn, 79 Pa. 159; Moore v. Taylor, 147 Pa. 481; Van Nort's Appeal, 121 Pa. 118; Stewart v. Maple, 70 Pa. 221; Clinton School District's Appeal, 56 Pa. 315; Hughes v. Kline, 30 Pa. 227.

*James S. Moorhead,* with him *Robert W. Smith,* for appellee.— Triennial assessments, in large counties, with a diversity of interests are not easily and readily made and adjusted but sometimes they may be completed early; but as this is an exacting statute in point of time and as seasons for making roads are short, if that year's valuation is not ready, is not adjusted, the supervisors are to take the last one furnished and go ahead in the performance of their duties: Stewart v. Maple, 70 Pa. 221; Canal Co. v. Walsh, 11 Phila. 587; Plains Twp.'s App., 21 Pa. Superior Ct. 68.

Equity had jurisdiction: Stewart v. Maple, 70 Pa. 221; Moore

v. Taylor, 147 Pa. 481; Smith v. Saul, 2 Pearson, 313; Miller v. Gorman, 38 Pa. 309.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

This bill was filed by the plaintiff to restrain the defendants from collecting road taxes for the year 1907. The prayer of the bill was granted and the defendants have appealed.

The township of Mt. Pleasant, one of the defendants, is a township of the second class. The plaintiff company is the owner of property in the township, the valuation of which for county purposes for the year 1906 had been fixed and adjusted at $2,014,545. As required by law, the road supervisors of the township met in March, 1907, and levied a tax on the taxable property therein for road purposes at the rate of four and one-half mills for work tax and two and one-half mills for cash tax, or seven mills in all. On May 31, 1907, the plaintiff company tendered to defendant Porch, the treasurer of the township, $13,397.67, the amount of road tax due upon the valuation of the plaintiff's property for the year 1906. The treasurer declined to receive the amount in full satisfaction of the road tax, but did accept it on account of the road taxes due from the plaintiff for the year 1907.

The assessor of the defendant township made and returned a valuation for the purpose of taxation to the county commissioners for the triennial year of 1906, prior to March 1, 1907. This valuation was revised and increased by the county commissioners, sitting as a board of revision, on June 25, 1907. From the valuation thus fixed by the board, the plaintiff company appealed to the common pleas and its valuation was not finally adjudicated by that tribunal until later in the year, 1907. Subsequent to the decree of the common pleas, revising and fixing the valuation, defendant Porch, treasurer of the township, notified the plaintiff company that, on the valuation fixed by the court, there was still due from it for road taxes for the year 1907 the sum of $16,664.38 for work tax, and $11,524.86 for cash tax, to which a penalty of five per centum would be added after November 1, and threatened to levy upon and sell the plaintiff's personal property in payment of the bal-

ance thus claimed to be due. This bill was then filed to restrain the defendant township and its collector from collecting the additional sum alleged to be due the township for road taxes.

As suggested by the court below, the determination of the cause requires the solution of two questions, viz.: 1. What is meant by "the last adjusted valuation for county purposes" as the phrase is used in the Act of April 12, 1905, P. L. 142? 2. If aggrieved, is plaintiff entitled to equitable relief as prayed for in its bill?

The learned trial judge has correctly answered both questions, and his very clear and full discussion amply sustains his conclusion.

The township of Mt. Pleasant, being a township of the second class, is within the provisions of the Act of April 12, 1905, P. L. 142. The second section of the act requires the supervisors to meet on the first Monday of March, and "proceed immediately to levy a road tax, which shall not exceed ten mills on each dollar of valuation, this valuation shall be the last adjusted valuation for county purposes, and which shall be furnished to said road supervisors by the commissioners of the proper county." The section also provides that before issuing the duplicate and warrant for the collection of road taxes, the board of supervisors of every township that has not abolished the work tax, shall give all taxables "full opportunity to work out their respective taxes." By the sixth section of the act, all taxpayers who pay their taxes before June 1 shall receive an abatement of five per centum; all taxes paid to the treasurer between June 1 and November 1 must be paid in full; and taxes paid thereafter must be paid with a penalty of five per centum.

It will be observed that the basis for levying the tax is "the last adjusted valuation for county purposes, and which shall be furnished to said road supervisors by the commissioners of the proper county." In March, 1907, when the supervisors of Mt. Pleasant township met to levy the tax, pursuant to the act of 1905, what was "the last adjusted valuation for county purposes" furnished to the supervisors of the township by the county commissioners? It was upon that valuation that the

statute required the supervisors to make the levy for the year 1907. The plaintiff maintains that it was the valuation of 1906 which, it is conceded, had been adjusted by the proper taxing authorities. The defendants contend that it was the valuation made by the township assessor and returned to the county commissioners in the fall of 1906 for the purposes of taxation for the year 1907. The learned court below sustained the plaintiff's contention.

The taxing system of this state is entirely a creature of statutory law, and the several steps required to be taken in the assessment and collection of taxes are regulated by statute. The general Act of April 15, 1834, P. L. 509, as supplemented and modified by subsequent legislation, is the present law of the state on the subject. It defines the subjects of taxation and provides the manner of making the assessments and the collection of taxes. The county commissioners issue their precept to the assessor on or before the second Monday of September, and he is required, on or before December 31, to return to the commissioners a list of the names of all taxable persons, and a list of all property taxable by law within his district, together with a valuation of the same to be made as provided by the statute. The commissioners may raise or reduce the value placed upon the property by the assessor, and after having examined and corrected the assessment or valuation, they are required to send a transcript of the assessment, together with a statement of the rate to the assessor, who is required to notify the taxable of the day fixed for an appeal. If the taxpayer desires, he may appear before the commissioners, who then sit as a board of revision, and ask such relief as he thinks he may be entitled to. Immediately after the conclusion of the appeals, the board of revision is required "to regulate the assessment according to the alterations made." By the Act of April 19, 1889, P. L. 37, 2 Purd. (12th ed.) 1984, if dissatisfied with the valuation, any owner of taxable property may appeal from the decision of the board of revision to the common pleas; and, by a subsequent statute, the judgment of the common pleas may be reviewed by the proper appellate court.

By this brief reference to the mode of procedure in the assessment of property for taxation, it is apparent, we think, that the mere return of the township assessor is not an "adjusted valuation" within the meaning of the act of 1905. It is simply one of the several steps to be taken in ascertaining the adjusted valuation of property for the purposes of taxation. Until the commissioners have examined and corrected the assessor's return and the board of revision has given the taxpayer an opportunity to be heard and has thereafter finally adjudicated the valuation, there is no assessment or valuation upon which a tax can be levied for either county or township purposes. Until that time, it is apparent, there has been no "adjusted valuation for county purposes." As long as the valuation returned by the assessor is open to correction by the board of revision, it certainly cannot be that the valuation has been adjusted within contemplation of the statute. The act of 1905 is specific as to the character of the valuation upon which the tax shall be levied; it is not simply a valuation returned by the assessor, but, as the act itself declares, "this valuation shall be the last adjusted valuation for county purposes, and which shall be furnished to said road supervisors by the commissioners of the proper county." The legislature, therefore, has not left open to doubt what the road supervisors shall have before them when they meet on the first Monday of March in each year to levy the road tax. It is "the last adjusted valuation" and not merely the valuation returned by the assessor. While the act of 1889 authorizes an appeal to the common pleas from the final adjudication of the board of revision, the appeal is not a supersedeas and does not prevent the collection of the tax. If the valuation is reduced, the excess of taxes is returned to the person who paid them.

The other and remaining question is whether the plaintiff company can redress its grievances by a bill in equity. While the assessment and collection of taxes are matters of statutory regulation and the taxing officers must strictly pursue the provisions of the acts of assembly in levying and collecting taxes, it is equally true that where there is a remedy at law the owner of taxable property, if aggrieved, must seek redress in the man-

ner pointed out by the statute. If, therefore, the legislature has provided a remedy which will afford the plaintiff company adequate relief for its grievances, it must pursue that remedy, and cannot invoke the assistance of a court of equity to prevent the wrongs with which it is threatened by the taxing officers of the defendant township. But has the legislature provided a remedy for the grievances of which the plaintiff complains in this suit? It is so contended by the defendants, and the remedy relied on is the thirty-sixth section of the Act of April 15, 1834, P. L. 509, 2 Purd. (12th ed.) 1998, which provides as follows: "That it shall be lawful for any person aggrieved by such rate or assessment to apply by petition to the next court of quarter sessions of the respective county, who shall have power to take such order thereupon, as to them shall be thought expedient, and the same shall conclude and bind all parties." It is conceded by both parties to this litigation that this section of the act of 1834 applies only to township taxes. It is contended by the defendants that the act provides a remedy for any party who is aggrieved by the action of the taxing authorities in fixing an illegal or incorrect rate of assessment of his property for township purposes, that the injury complained of in the bill in this case is that the assessment of the plaintiff's property made by the supervisors is on a wrong valuation or basis, and that therefore the act of assembly affords the plaintiff adequate relief by an appeal to the quarter sessions. It is true, as argued by defendants, it is not alleged in the bill that the supervisors did not have the authority to levy a tax or that the property on which the tax was levied was not taxable for township purposes. Let us examine the facts of the case, as presented by the pleadings and testimony, and see whether the act of assembly furnishes an adequate relief for the injury complained of in the bill filed by the plaintiff.

It is conceded that the supervisors did not levy a tax in March, 1907, on the adjusted valuation for the year 1906. The board of revision did not adjust the valuation of the plaintiff's property for county purposes for 1907 until June 25 of that year, when they fixed the valuation at $750 per acre which,

on appeal to the common pleas, was finally adjusted, some months thereafter, at $680 per acre. It is apparent, therefore, that the supervisors did not levy a tax in March, 1907, on the valuation of the plaintiff's property returned by the assessor for that year and adjusted by the board of revision, and we think it equally clear that the supervisors did not make the return of the assessor for that year the basis of the tax levied for the year. If the officers had levied the tax on the valuation returned by the assessor for the year 1907, and given the plaintiff company notice of the tax as required by the statute, it is quite probable that the company would have been compelled to go into the quarter sessions for relief. The company would then have had an opportunity to have the basis of the valuation corrected by "the next court of quarter sessions."

The plaintiff, however, is not threatened with a sale of its property by the township collector for taxes levied upon the valuation returned by the assessor of the township for 1907. The defendants do not seek to enforce a tax levied upon such basis nor is the plaintiff company resisting the collection of taxes laid upon that basis. The claim of the defendants is made for taxes levied upon a valuation as finally revised by the court in the fall of 1907. This appears by paragraph six of the defendant's answer which, inter alia, is as follows: "This notice (requiring the plaintiff company to pay the taxes in dispute) has been given and this claim is made upon the said plaintiff under the belief that the valuation returned by the assessor for the year 1907, as finally revised by the county commissioners and the court of common pleas, is the basis on which the taxes for 1907 were levied and should be collected."

It is apparent, we think, that the undisputed facts of the case show that the thirty-sixth section of the act of April 15, 1834, furnishes no adequate remedy for the relief sought by the plaintiff company, and which we hold it is entitled to. We need not discuss or determine the meaning of the words "rate" or "assessment" as used in the act of assembly, as the facts of this case show that the plaintiff company could not avail itself of the statute to afford it redress for the grievances of which it complains. There was no action of the supervisors in March,

1907, in fixing a basis for the levy of that year from which the plaintiff could have appealed to the next court of quarter sessions as required by the act of 1834, which, as stated by the counsel of the defendants, commenced on the second Monday of the following May. So far as the record discloses, there was no attempt on the part of the taxing authorities of the township to comply with the act of 1905, by giving the plaintiff company notice of the levy of any road tax in March, 1907, or by giving it notice and an opportunity to work out its portion of the work tax or to pay the cash tax assessed against it in that month so as to secure the abatement of five per cent and avoid the penalty imposed by the statute. In fact, the action of the supervisors in not levying the tax in March on the last adjusted valuation, prevented a compliance with those provisions of the law.

The conduct of the supervisors in delaying the levying of the tax on the last adjusted valuation and in now seeking to recover the taxes levied on the basis of the valuation fixed by the court in the fall of 1907, deprives the plaintiff of an opportunity to appeal for redress to the next court of quarter sessions within the meaning of the act of 1834. The act of 1905, in its mandatory provisions, requires the supervisors to levy the tax at their session in March. The basis as well as the rate of taxation is then fixed, or should be, if the provisions of the statute are observed. The taxpayer can then determine whether he is aggrieved by the action of the supervisors; and the act of 1834 contemplates that if he is aggrieved "by such rate or assessment" he shall "apply by petition to the next court of quarter sessions of the respective county" for relief. The "next court of quarter sessions" is the court which first convenes in regular session subsequent to the date when the law requires the rate or assessment to be fixed by the supervisors. The purpose of the legislature was to give the taxpayer a speedy and summary remedy for his grievances. It is necessary that the taxing officers act promptly in levying and collecting taxes, and to accomplish the purpose it is necessary that any objection by the taxpayer to the action of the supervisors should be speedily disposed of. This could be done

and was intended to be done by requiring the taxpayer to apply to the next court of quarter sessions after the tax was levied. It is absolutely necessary that this interpretation of the act of 1834 should prevail if the taxpayer's rights are to be protected and enforced under the act of 1905. By that statute, the taxpayer is entitled to an abatement of five per cent if he pays his taxes before June 1 of the year and is subjected to a penalty of five per cent if they are not paid until after November 1 of the year. The act also requires the supervisors to give the taxpayer an opportunity to work out his work tax. It is therefore apparent that "the next court of quarter sessions," to which a taxpayer may appeal for an alleged incorrect or illegal levy, is the court immediately succeeding the levy of road taxes made in March.

We think it clear that the remedy invoked by the plaintiff company in this proceeding is the only one which can give adequate relief for the injury or wrong threatened it, and therefore the bill must be sustained. If our conclusion deprives the township of a large part of its revenues by permitting the plaintiff company to escape payment of its road taxes on the valuation of 1907, the loss is attributable to the statute, the provisions of which are clear and mandatory. We cannot assume the functions of the legislature, and, by construction, furnish a remedy which lies solely with that department of the government. It is our province to construe and not to make the law.

The decree is affirmed.